IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAROLYN V. HENDERSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL NO. L-08-1317 |
| | : | |
| CLAIRE'S STORES INC., | : | |
| *et al*., | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

Carolyn V. Henderson, proceeding *pro se*, filed suit against Defendant Claire's Stores and Claire's Boutiques, Inc. on June 29, 2006 in the Circuit Court for Baltimore County. The case was removed to federal court on May 21, 2008, on grounds of diversity. Her multi-count complaint alleges causes of action in defamation, false light invasion of privacy, false imprisonment, fraud, and intentional infliction of emotional distress. In her complaint, Ms. Henderson seeks $900,000 in compensatory damages and $2,250,000 in punitive damages. On January 23, 2009, Defendants moved for summary judgment. Judge Davis held a motions hearing on March 30, 2009. On April 8th, the Court issued a memorandum and order granting in part, and denying, in part, Defendant's Motion for Summary Judgment.

Two causes of action survived summary judgment:

1) False imprisonment for refusing to return Henderson's driver's license promptly after Henderson requested its return. This action allegedly deprived Henderson, albeit temporarily, from leaving the shopping center in her car.

  2)  Defamation that occurred when a store employee asserted, within the hearing range of other store customers, that Henderson's driver's license was a fake or stolen.

On May 20, 2009, after Judge Andre M. Davis was nominated to the Fourth Circuit Court of Appeals, this case was transferred to the undersigned. A settlement conference was held on August 21, 2009 before U.S. Magistrate Judge James K. Bredar. The parties failed to settle. The discovery deadline was extended until October 30, 2009 for Ms. Henderson to conduct several *de bene esse* depositions.

On September 30, 2009, the Defendants filed a Renewed Motion for Summary Judgment on the remaining issues in this case. The Motion is now fully briefed and no hearing is necessary. As explained more fully below, the Court will, by separate Order filed this date, DENY summary judgment as to the two substantive matters and GRANT it as to Claire's Stores, Inc.

**I. Background**

Judge Davis summarized the background of this case in his earlier ruling on summary judgment. See Henderson v. Claire's Stores, Inc., 607 F. Supp.2d 725 (U.S. Dist. Md 2009). He stated that:

> [Ms. Henderson's] claims arise from a single visit to one of defendant's retail stores to purchase inexpensive jewelry. … On June 30, 2005, at approximately 4:00 p.., Henderson went shopping at Claire's in the Perryville Outlet Center in Perryville, Maryland. She was prohibited from entering the store with her small dog, which she was carrying in a large zippered handbag. After securing her dog outside the store, she entered the store and selected approximately 200 items (each, apparently, on sale for fifty-cents) and proceeded to the sales counter to pay for her purchases. … Before ringing up Henderson's purchase, [assistant manager Tiffany] Whalen noticed that Henderson had taken several of the slatwall hooks off the all of the store and told her that the slatwall hooks were not for sale. Henderson explained to Whalen that she did not want to purchase the

> hooks, and instead left the jewelry on the hooks to make it easier for her, the cashier, to ring up her purchase….
>
> Henderson gave Whalen her credit card and driver's license. Whalen took a long time examining the license and credit card and then asked if the driver's license belong to Henderson. Henderson said yes.  It is undisputed that the license photo had been taken (and the license issued) within the preceding six months. Henderson insists that her appearance had not changed much from the day the photo was taken, and that, specifically, her hair style was exactly the same as it was when the photo was taken.  Nevertheless, Whalen insisted that the picture on the license did not look like Henderson.
>
> Instead of accepting the payment, Whalen 'accused [plaintiff] of having a stolen credit card and bogus driver's license' and 'claimed that the picture on the driver's license did not look like [plaintiff].'  Henderson, by now frustrated by the entire ordeal, asked [] that her documents be returned so that she could abandon her purchases and depart. Whalen refused to return Henderson's credit card or driver's license until they were verified by mall security.  She called Officer Moore, who returned to the store in about ten minutes or so, carefully looked over the cards and found them valid…. Henderson paid for her items and completed her purchase.

Id. at 729.   As she was leaving, Henderson noticed that she had been overcharged for several items.  A manager came out to assist her and refunded her money.  Henderson filed an official report with Claire's headquarters, and several weeks later met with a representative who apologized.  Ms. Henderson filed this action exactly one day before the one-year deadline under Maryland's statute of limitations.  She did not serve process however, until two years later.

## II.     Motion for Summary Judgment

### a.  Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses

3

from proceeding to trial).  Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

### b. Proper Defendant

Defendants allege, and have presented evidence in the form of an affidavit, that the proper defendant in this case is Claire's Boutiques, Inc.  Claire's Stores, Inc. did not own or operate the Perryville, Maryland store which is at issue in the present case.  This assertion is supported by Amy Bader, Director of Risk Management for Claire's Boutiques, Inc., who avers that Claire's Stores Inc. is a separate entity.  Ms. Henderson offers no rebuttal or response in opposition.  Therefore, summary judgment is granted as to Claire's Stores, Inc.  Claire's Boutiques, Inc. ("Claire's") is the remaining Defendant in the case.

### c. False Imprisonment

In his ruling on Claire's first motion for summary judgment, Judge Davis found that Ms. Henderson's false imprisonment action survived summary judgment by "the thinnest of margins" because there was a genuine issue of material fact regarding whether Claire's – acting through Whalen – deprived Henderson of her liberty, however briefly, without justification." 607 F. Supp. 2d at 734.  Defendants move again for summary judgment on this claim, claiming that additional depositions now taken clarify the record to show that Ms. Henderson cannot assert a *prima facie* case of false imprisonment.  Ms. Henderson disagrees.

Maryland law requires that a plaintiff show that he or she has been deprived of liberty without consent and without legal justification. Manikhi v. Mass Transit Admin., 360 Md. 333, 758 A.2d 95, 112 (2000).  Furthermore, Maryland Courts have ruled that "to constitute a case of false imprisonment there must be some direct restraint of the person; but to constitute

4

imprisonment in such case, confinement in jail or prison is not essential. Any exercise of force, or threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment…." Mason v. Wrightson, 205 Md. 481, 109 A.2d 128, 131 (1954).

The Defendants offer the depositions of Officer Moore and Whalen in support of their contention that Ms. Henderson was not illegally detained. Officer Moore states that after he received a call from Claire's he went directly to the store, which took him around 30 seconds. Whalen handed him Ms. Henderson's license and credit card, and he took about 20 seconds to verify that the signatures matched. He did not perform a warrant check, as Ms. Henderson testified during the hearing by Judge Davis. According to Officer Moore, from the time when he was called until the time when Ms. Henderson was given back her license and credit card, only one to two minutes elapsed. Ms. Henderson disputes the accuracy of this timing, relying on Officer Moore's information that his office was around 1000 yards away from Claire's Store, and that there is no way he could have covered that distance in 30 to 60 seconds. Whatever the distance covered and time elapsed, it is clear from the record that it was very brief and probably under five minutes.

Claire's also argues that at no time did Ms. Henderson ask that her license and credit card be returned to her. Whalen, the sales clerk who was helping her, stated in her deposition that she did not recall Ms. Henderson asking for her license and credit card back at any time. Ms. Henderson argues otherwise – that she did indeed ask for her credit card and license back. Specifically, she has averred that "[f]or several minutes, I debated with Tiffany Whalen about the picture on my driver's license and the validity of the license and credit card; and insisted several times that she return my driver's license and credit card so that I could leave the store; and that I had no money to pay for the items I wanted to purchase." Therefore, a dispute exists as to

whether or not Ms. Henderson actively asked for her card and license back and, if she did, whether or not Whalen refused to give it to her.

Though according to Officer Moore the time it took for him to get there was several minutes shorter than the time Ms. Henderson stated at trial, the timing is largely irrelevant. The crux of the matter is whether or not Ms. Henderson asked for her credit card and license to be returned and Whalen refused. Therefore, a genuine issue of material fact remains disputed and summary judgment is not warranted.

### d. Defamation

In her original complaint, Ms. Henderson alleged two counts of defamation, for separate comments or allegations made during her visit to Claire's on June 30, 2005. Judge Davis granted summary judgment on her first claim, but ruled that her second defamation claim survived summary judgment. Henderson, 607 F. Supp. 2d at 731. Ms. Henderson alleges in her complaint that after she handed Whalen her credit card, Whalen "claimed that the picture on the driver's license did not look like Ms. Henderson and accused Ms. Henderson of having a stolen credit card and bogus driver's license." Ms. Henderson claims that there were other customers in line at the store and that she was embarrassed and humiliated by Whalen's assertions. Defendants argue that "further discovery has shown" that they are entitled to summary judgment on Ms. Henderson's defamation claim.

As stated by Judge Davis in his ruling, because Ms. Henderson is not a public figure, a prima facie case of defamation requires proof of the following elements: (1) that the defendant made a defamatory communication--i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3)  that the

defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. Id. at 730 quoting Shapiro v. Massengill, 661 A.2d 202, 216 (Md. App. 1995).

A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." Batson v. Shiflett, 325 Md. 684, 722-23, 602 A.2d 1191 (1992). In this case, any assertion by Whalen that Ms. Henderson had stolen a credit card of that her license was a fake would qualify as statements that were defamatory per se. A statement is defamatory per se when the injurious character of the words is self-evident, as it would be with falsely charging someone of a crime (e.g. stealing a credit card). Metromedia, Inc. v. Hillman, 285 Md. 161 (1979); American Stores Co., v. Byrd, 229 Md. 5 (1962).

Defendants offer the sworn testimony of Whalen, as well as of Officer Moore, to support their contention that no defamatory statements were made. Whalen, in her deposition, answered "no" when asked if she recalled making any statements about Ms. Henderson's license being fake or having a stolen credit card. Similarly, Officer Moore said that he did not recall Whalen saying "anything defamatory" about Ms. Henderson, or that Whalen was using a loud or raised voice. Rather, in his incident report, Officer Moore notes that "Ms. Henderson became a little loud, not to the point of disorderly conduct."[1] Officer Moore also stated in his deposition that while there were other customers in the store, none of them were close to the register or in line, implying that even if Whalen made such a remark, no one is likely to have heard it.

---

[1] In her deposition, offered as an Exhibit by Ms. Henderson, Whalen offers a story that differs from Ms. Henderson's account. Whalen says that for any "high dollar transactions" – anything over $100 – they must alert the manager on duty and request photo identification from the customer. Whalen said that she alerted a store manager and asked Ms. Henderson for her I.D. Upon receiving the driver's license, Whalen gave it directly to the manager who looked at her and gave it back. The manager then gave Whalen "a look" which Whalen took to mean that she should seek additional verification. She therefore asked Ms. Henderson for her address. Ms. Henderson responded with an address that differed from the one on the card and so Whalen then asked for her birth date. She responded correctly, and so Whalen then ran the credit card through and proceeded with the transaction. It is unclear if Whalen or the on-duty store manager called security. See Exhibit D.

Officer Moore's incident report, written the night of the incident at Claire's, says that when he arrived at the store after being called by Whalen, "she claimed that the license handed to her by Ms. Henderson to verify the credit card was not Ms Hendersons, implying to me that it was a fake or stolen license [sic]."

There are disputes of fact concerning (i) what Whalen said about the driver's license, and (ii) whether any of the store's customers overheard the comments. The parties have not briefed three issues, and the Court will state its assumptions with respect to them. First, Officer Moore, was in a position to overhear Whalen's remarks. The Court will assume that he does not count for purposes of publication (a necessary element for defamation) because communications of security concerns to a security officer are privileged. Second, Henderson can establish publication even though she cannot name any individual who heard the defamatory remarks. For purposes of publication, the Court will assume that it is enough that the plaintiff prove that a person heard the remarks even though the identity of the hearer is unknown. Third, Henderson is not required to call as a witness a person who overheard the remarks. If the parties conclude that these propositions are incorrect, they may file brief (no more than three pages) memoranda on or before January 11, 2010.

It is improper for the Court to make determinations of credibility, and this case largely turns on whose report is accurate – Ms. Henderson's or Ms. Whalen's. Officer Moore's report, because it was so timely written, lends credence to the belief that perhaps Whalen did not believe that the credit card or license were Ms. Henderson's, but it does not say that Whalen stated this belief out loud. Furthermore, Officer Moore does not remember "Whalen saying anything defamatory." Because we are at the summary judgment stage, I must take all facts in the light most favorable to the non-moving party. Thus, I find that an issue still remains on what was actually said to Ms. Henderson while she was in line attempting to make her purchases.

Ms. Henderson has also alleged that Whalen knew that her accusations about having a stolen credit card or driver's license were false and that she said them with a reckless disregard for the truth. The Defendants move that Ms. Henderson cannot establish actual malice by clear and convincing evidence, and so cannot be awarded punitive damages. Maryland courts have established that in order to collect punitive damages for a tort, plaintiffs must show, by clear and convincing evidence, that a defendant acted with actual malice in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will or fraud. Scott v. Jenkins, 345 Md. 21, 690 A.2d 1000 (1997) and Heinze v. Murphy, 180 Md. 423, 434, 24 A.2d 917, 922-2 (1942). Judge Davis found that the record was unclear as to whether Whalen "acted negligently or with actual malice."

Though the parties have differing accounts as to what Whalen actually said, it is undisputed that security was called. As Judge Davis held, "the license contained all of the proper components of a Maryland license, indicating that it was not fraudulent. Importantly, Officer Moore had no difficulty in concluding that the license presented by plaintiff was her own… Officer Moore's so-called "verification' that the documents were authentic consisted simply of comparing the photo on Henderson's license to Henderson. Summoning security did not provide Whalen with any additional expertise or information. Furthermore, making Henderson wait for the guard to arrive was embarrassing to her." 607 F. Supp 2d at 731-2. Despite the additional information provided by Officer Moore and Ms. Whalen, the record still presents a genuine issue of material fact regarding whether Whalen acted negligently or with actual malice when she called Officer Moore to the store and stated – or implied to him – that Ms. Henderson's credit card and license were stolen or fake.

**III.   Conclusion**

Though discovery has now been complete, the additional testimony and depositions are not enough to meet the standard for granting summary judgment on the remaining substantive issues. Genuine issues of material fact remain disputed as to (1) whether Ms. Henderson was prevented from leaving the store because Ms. Whalen refused to give back her credit card and license and (2) what statements, if any, Ms. Whalen made about Ms. Henderson and the driver's license and credit card.

Dated this 21st day of December, 2009.

_____/s/_____
Benson Everett Legg
Chief Judge